IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DEVIN FLOYD, <br> Plaintiff, <br> v. <br> SANTA CLARA DEPARTMENT OF CORRECTION, et al., <br> Defendants. | Case No. 22-cv-00750-CRB <br><br> **ORDER GRANTING MOTION TO DISMISS** |

Pro se Plaintiff Michael Devin Floyd alleges that his constitutional rights were violated at the two county holding facilities where he was detained after he was arrested by Defendant San Jose Police Department (SJPD). He alleges that he was denied adequate access to the bathroom and to a phone call and was forcibly placed into a wheelchair and stripped naked. Am. Compl. (dkt. 19). In addition to suing SJPD, Floyd sued the Santa Clara Department of Correction, the County of Santa Clara, the County of the Santa Clara Office of the Sheriff, and Elmwood Correctional Facility.[1] SJPD (but not the other defendants) moves to dismiss because Floyd has not pleaded that SJPD was involved in the alleged events at the holding facilities. Mot. at 7-8. The Court GRANTS SJPD's Motion to Dismiss with leave to amend.

## I. BACKGROUND

Floyd is a Louisiana resident. Am. Compl. at 1. Defendant San Jose Police

---

[1] In a separate action pending before Judge Orrick, Floyd alleges that the SJPD violated his constitutional rights during the arrest itself. See Floyd v. San Jose Police Department et al., No. 22-cv-751 (N.D. Cal.).

1  Department (SJPD) is a governmental agency in Santa Clara County. Id. at 11.

2  On August 18, 2021 at 9:30 p.m., Floyd was arrested by SJPD. Am. Compl. at 4. Prior to this, he had taken a "concoction that would empty [his] bowels." Id. After he arrived at the first holding facility, which he does not know the name of, he used the toilet twice. Id. at 4-5. The officers refused when he asked to use the toilet for the third time. Id. at 5. Floyd also asked to make a phone call to his family pursuant to California Penal Code section 851.5, which entitles arrestees to three phone calls immediately upon booking and no later than three hours after arrest, except where physically impossible. Id. The officers again rejected his request and informed him that he needed to wait till he arrived at the second holding facility. Id.

On August 19 at approximately 2 a.m., Floyd arrived at Elmwood Correctional Facility, the second holding facility. Id. at 6. He was again denied access to phone calls and bathroom by the staff members. Id. at 5. After Floyd waited for several hours, he was allowed to use the bathroom, but was informed by the officers at Elmwood that he could only make phone calls after he changed into prison clothes. Id. Floyd refused to change his clothes, worried that he would never get a chance to call his family. Id. Several different officers and psychiatrists came and asked Floyd to follow the commands. Id. Several officers at Elmwood allegedly made fake attempts to call the number Floyd provided and told Floyd that the number was disconnected. Id. at 6. Afterward, the officers used force to restrain him and put shackles on his feet and put him in a helpless position, with a boot on his lower back. Id. At this point, Floyd had been detained for more than 20 hours. Id. Floyd felt desperate and decided to cooperate. Id. He was put in a wheelchair and rolled into a jail cell. Id. The officers stripped him naked. Id. Floyd again asked to use the phone, and the officers told him to wait 24 hours due to COVID. Id. Floyd was informed of his Miranda rights shortly after. Id. He was finally allowed to use the phone at 8:30 a.m. on August 20. Id.

Floyd appears to allege Section 1983 claims for: (1) a violation of his Fifth and Fourteenth Amendment rights to due process when the staff at both facilities denied him

1  timely access to the bathroom and to phone calls; (2) a violation of the Eighth Amendment
2  prohibition on cruel and unusual punishment when the staff at Elmwood took him to a jail
3  cell and stripped him naked; (3) a Monell claim based on the related customs and policies
4  at the Elmwood facility. Id. at 7-8.

5  In the amended complaint, Floyd included SJPD as a defendant because SJPD
6  arrested him and brought him to the first facility, so it might be responsible "in case the
7  fault for lack of due process falls at fault with the first facility." Id. at 8.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019) (cleaned up). A complaint must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (200) (cleaned up). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). "Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). A court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed,

3

undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008).

### III. DISCUSSION

SJPD argues that Floyd fails to sufficiently plead that SJPD had anything to do with his alleged mistreatment at the detention centers. Mot. at 7. Floyd responds that he sued SJPD because it brought him to the first facility (and he does not know who runs it). Opp'n at 7; Am. Compl. at 8.

Floyd falls short of alleging specific facts to support any claim against SJPD. Floyd sets forth no allegation that any SJPD staff worked at the first holding facility or were present when he was subject to the alleged unfair treatment. It is true that allegations in a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972). But even when construed broadly, without more, it is implausible to assume that SJPD staff participated in the events alleged. Floyd fails to plausibly plead that SJPD is a "person who committed the alleged violation" that gives rise to his claim. See 42 U.S.C. § 1983.[2]

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion to Dismiss as to SJPD, with leave to amend.[3]

**IT IS SO ORDERED.**

Dated: July 22, 2022

CHARLES R. BREYER
United States District Judge

---

[2] Because the Court concludes that Floyd fails to state a claim, the Court needs not reach SJPD's alternative argument based on the doctrine of claim splitting.
[3] The County of Santa Clara (which did not move to dismiss) recently stated in a filing that "Plaintiff was booked into the Main Jail and then taken to the Elmwood Correctional Facility." See dkt. 46 at 1. This suggests that the first facility was also a county-run jail.

4