IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DEVIN FLOYD,<br><br>    Plaintiff,<br><br>    v.<br><br>SANTA CLARA DEPARTMENT OF CORRECTION, et al.,<br><br>    Defendants. | Case No. 22-cv-00750-CRB<br><br>**ORDER DENYING MOTION TO DISMISS, DENYING MOTION FOR SANCTIONS, AND DENYING MOTION FOR ENTRY OF FINAL JUDGMENT** |

Pro se Plaintiff Michael Devin Floyd alleges that his constitutional rights were violated at two county holding facilities where he was detained after his arrest in August 2021. Floyd alleges that he was denied adequate access to the bathroom and to a phone call and was forcibly placed into a wheelchair and stripped naked. See Third Amended Compl. ("TAC") (dkt. 78) at 9–12. Floyd brings suit against the Santa Clara Department of Correction, the County of Santa Clara, the County of Santa Clara Office of the Sheriff, Elmwood Correctional Facility, and employees of these institutions in their official and individual capacities. See TAC at 17–18.

The County of Santa Clara moves to dismiss the proposed defendants: Agustin, Barajas, Cabrera, Campos, Cofferati, Cortez, Dias, Evans, Hernandez, Hiles, Patino, Quadros, Reyes, Serrano-Alvarez, Silos, Stokes, and Tran, arguing Floyd fails to plead with enough specificity to articulate each defendant's participation in the alleged constitutional violations.[1] See Mot. to Dismiss ("MTD") (dkt. 80) at 1. In addition, Floyd

---

[1] The individual defendants listed are officers and other staff at the Santa Clara County Main Jail and Elmwood Correctional Facility who were on shift during Floyd's detention. Specifically, the County moves to dismiss any individual defendant in the complaint where

moves for the Court to enter final judgment on the Court's Order denying him leave to amend to incorporate his state law claims into the complaint. See Mot. for Entry of Final Judgment (dkt. 79). Floyd also moves to strike the County's motion to dismiss and seeks sanctions against the County. See Mot. to Strike (dkt. 82); Mot. for Sanctions (dkt. 83).

As explained below, finding this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), the Court DENIES the County's motion to dismiss, DENIES Floyd's motion for entry of final judgment, and DENIES Floyd's motion for sanctions.

I. BACKGROUND

A. Factual Allegations

On August 18, 2021 at 9:30 p.m., Floyd was arrested by SJPD. TAC at 8. Prior to this, he had taken a "concoction that would empty [his] bowels." Id. After he arrived at the first holding facility, Santa Clara County Main Jail, he used the toilet twice. Id. at 8. The officers refused when he asked to use the toilet for the third time. Id. at 9. Floyd also asked to make a phone call to his family pursuant to California Penal Code section 851.5, which entitles arrestees to three phone calls immediately upon booking and no later than three hours after arrest, except where physically impossible. Id. The officers again rejected his request and informed him that he needed to wait until he arrived at the second holding facility. Id. The officers—specifically Tran, Silos, Hiles, Agustin, Stokes, and Reyes—surrounded him and demanded he leave the jail without using the restroom or making a phone call. Id. at 4, 9.

On August 19 at approximately 4:00 a.m., Floyd arrived at Elmwood Correctional Facility, the second holding facility. Id. at 4. He was again denied access to phone calls and bathroom by other staff members. Id. After Floyd waited for several hours, he was allowed to use the bathroom, but was informed by officers at Elmwood—specifically Cofferati, Dias, and Evans—that he could only make phone calls after he changed into

Floyd's allegations are tied to two or more people. See TAC at 4–6, 9–12.

2

1    prison clothes.  Id. at 5, 10.  Floyd refused to change his clothes, worried that he would
2    never get a chance to call his family.  Id. at 10.  Several different officers and psychiatrists
3    came and asked Floyd to follow the commands.  Id. at 10–11.  Several officers at
4    Elmwood allegedly made fake attempts to call the number Floyd provided and told Floyd
5    that the number was disconnected.  Id. at 11.  Afterward, officers Evans, Cabrera, Quadros,
6    Serrano-Alvarez, Barajas, Patino, Cortez, Campos, Dias, Hernandez, and Reagan used
7    force to restrain him and put shackles on his feet and put him in a helpless position, with a
8    boot on his lower back.[2]  Id. at 5, 11–12.  At this point, Floyd had been detained for more
9    than 20 hours.  Id. at 12.  Floyd felt desperate and decided to cooperate.  Id.  He was put in
10   a wheelchair and rolled into a jail cell.  Id.  Eight officers—specifically Evans, Cabrera,
11   Quadros, Serrano-Alvarez, Barajas, Patino, Cortez, and Campos—stripped him naked.  Id.
12   at 6, 12.  Floyd again asked to use the phone, and the officers told him to wait 24 hours due
13   to COVID.  Id. at 12.  Floyd was informed of his Miranda rights shortly thereafter.  Id. at
14   13.  He was finally allowed to use the phone at 8:30 a.m. on August 20.  Id.

Floyd appears to allege Section 1983 claims for: (1) a violation of his Fifth and Fourteenth Amendment rights to due process when the staff at both facilities denied him timely access to the bathroom and to phone calls; (2) a violation of the Eighth Amendment prohibition on cruel and unusual punishment when the staff at Elmwood took him to a jail cell and stripped him naked; (3) a Monell claim based on the related customs and policies at the Elmwood facility.  Id. at 13-15.

### B.     Procedural History

After the parties completed discovery, Floyd moved to amend his complaint to allege his claims against individual defendants and allege additional state-law claims.  See dkt. 71-2.  On March 3, 2023, the Court found that Floyd unduly delayed in adding the

---

[2] The County does not move to dismiss seven individual defendants: Garcia, Reagan, Sanchez-Perez, Cote, Vorpahl, Dickson, and Newton.  See TAC at 5–7.  Although Reagan is tied to this group allegation, Floyd alleges other factual matters wherein Reagan is the lone defendant tied to those specific allegations, and thus the County does not move to dismiss Reagan.  See TAC at 5, 11.

3

1   state-law claims and failed to allege, with specificity, the actions taken by the individual
2   defendants in the alleged misconduct, and thus, the Court denied leave to amend.  See
3   Order (dkt. 75) at 1.  However, the Court provided Floyd the opportunity to revise his third
4   amended complaint to allege the precise actions the defendants took to deny Floyd a phone
5   call, a visit to the bathroom, or to exert excessive force against him.  Id.
6        On March 19, 2023, in accordance with the Court's order, Floyd filed his third
7   amended complaint.  See TAC.  Shortly thereafter, Floyd moved for entry of final judgment
8   under Federal Rule of Civil Procedure 54(b) in connection with the state-law claims the
9   Court denied leave to amend to add.  See Mot. for Entry of Final Judgment.  On April 3,
10  2023, the County moved to dismiss defendants in the TAC for failure to allege, with
11  specificity, the actions of each individual defendant.  See MTD at 1.  Ten days later, Floyd
12  moved to strike the County's MTD because the County did not represent the individual
13  defendants and the individual defendants had not been served.  See Opp'n to Mot. to
14  Dismiss & Mot. to Strike at 4.  That same day, Floyd also moved for sanctions against the
15  County for not moving forward with contacting their employees to inform the individual
16  defendants of their participation in the suit and request their waiver of service.  See Mot.
17  for Sanctions at 3–4.
18       The Court addresses the parties' motions in turn: first, the County's motion to
19  dismiss; second, Floyd's motion for entry of final judgment; and third, Floyd's motion for
20  sanctions.
21  **II.   MOTION TO DISMISS**
22     **A.   Legal Standard**
23       Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint
24  for failure to state a claim upon which relief may be granted.  Dismissal may be based on
25  either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under
26  a cognizable legal theory."  Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th
27  Cir. 2019) (cleaned up).  A complaint must plead "sufficient factual matter, accepted as
28  true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662,

4

678 (200) (cleaned up).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  "Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008).

### B. Discussion

To bring a § 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted).  Liability attaches when "[a] person deprives another 'of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation.'"  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  A defendant cannot be held liable merely because of his participation in a group without "a showing of personal participation in the alleged rights deprivation."  Jones v. Williams, 297 F.3d 930,

1    934 (9th Cir. 2002).  Nor can the defendant be held liable under § 1983 as a bystander.
2    See Peck v. Montoya, 51 F.4th 877, 889 (9th Cir. 2022) (citations omitted).  In other
3    words, it is essential to establish the integral participation of each defendant in the alleged
4    constitutional violation.  Id.
5         To allege group participation without alleging the individual's precise actions,
6    courts often look to whether it is "facially plausible" that each person in the group engaged
7    in the same allegedly unlawful conduct.  Isakhanova v. Muniz, No. 15-cv-03759-TEH,
8    2016 WL 362397, at *4–5 (N.D. Cal. Jan. 29, 2016) (citing DeLuca v. County of Los
9    Angeles, No. 15-00344-DMG, 2015 WL 4451420, at *4 (C.D. Cal. July 20, 2015)).  Given
10   the 12(b)(6) standard, when plaintiffs put each defendant on notice as to the claims against
11   them and the allegations are facially plausible as to each individual's participation in the
12   group conduct, the plaintiff meets their burden at the pleading stage.  See, e.g., Isakhanova,
13   2016 WL 362397, at *4 (alleging "only that [defendant] participated in the unlawful search
14   and seizure of Plaintiff" without any factual allegations is insufficient); Hughey v.
15   Camacho, No. 13-cv-2665-TLN, 2015 U.S. Dist. LEXIS 113473, at *10-11 (E.D. Cal.
16   Aug. 24, 2015) (holding that "[p]laintiffs are not required to know which of the eight
17   officers performed every act throughout the altercation"); Ruiz v. United States, No.
18   EDCV 20-699-JGB, 2021 WL 5993531, at *4 (C.D. Cal. Sept. 17, 2021) ("Should Plaintiff
19   have taken notes during [the severe beating]? . . . Plaintiff filed . . . a short and plain
20   statement describing his allegations; he amended the Complaint to substitute the names of
21   Individual Defendants for Doe Defendants as those names were revealed to him.  Plaintiff
22   has met [his] pleading burden[].")
23        By way of screenshots of video footage obtained through discovery, Floyd connects
24   the individual officers to the events that occurred during his detention at the Santa Clara
25   County Main Jail and Elmwood Correctional Facility.  See TAC at 4–13.  In each
26   encounter with the officers, he describes his alleged deprivation and the officers allegedly
27   involved in that deprivation.  Id.  Floyd's allegations are of two types: physical altercations
28   and refusals to use the bathroom or make a phone call.  The physical altercations that

comprise Floyd's excessive force claim include "attempt[ing] to remove the Plaintiff by force from the lobby" and "remov[ing] the Plaintiff by force from the lobby of Elmwood [and] subjecting the Plaintiff to dress in prison clothes" and "apply[ing] enough force on the Plaintiff's arm to signal that the arm would be broken if the Plaintiff struggled with the SWAT dressed officers." Id. 5–6, 11–12. While not specific enough to pinpoint each exact movement of each officer, Floyd's allegations are facially plausible and provide enough detail as to the time, place, and specific actions to ensure the officers understand the charges against them. At this stage, that is sufficient. The Court therefore declines to dismiss the claims against Evans, Cabrera, Quadros, Serrano-Alvarez, Bajaras, Patino, Cortez, Campos, Dias, and Hernandez.

       The second type of allegation relates to Floyd's deprivations of a phone call and the restroom at the two facilities. Like the physical altercation allegations, Floyd describes a series of play-by-play interactions with the officers who denied him the opportunity to use the restroom and make a phone call. See TAC 4–5. The County argues that Plaintiff does not allege with specificity because he merely provides a narrative, followed by a listing of any officers involved in the narrative. See MTD at 4. Floyd counters that these officers were specifically listed as each "elected to deny the Plaintiff of a phone call." See Opp'n to Mot. to Dismiss at 6. Floyd elaborates on this point, explaining that other officers were present but did not engage in these conversations or assist the named defendants, and so are not party to the suit. Id. By connecting the officers to the exact deprivation, the officers are put on notice as to their actions and the claims against them. Given that courts must construe pro se pleadings liberally, Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002), and the notice pleading standard is met, the Court also declines to dismiss the claims against Tran, Silos, Hiles, Agustin, Stokes, Reyes, Cofferati, Evans and Dias.

       Because the Court denies the County's motion to dismiss, the Court need not reach Floyd's motion to strike.[3]

---

[3] Regardless, Floyd's motion to strike is improper, because a party can move to strike only pleadings, not motions. See Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir.

### III. MOTION FOR ENTRY OF FINAL JUDGMENT

#### A. Legal Standard

Under Federal Rule of Civil Procedure 54(b), "when an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Rule 54(b) was adopted "specifically to avoid the possible injustice of delay[ing] judgment o[n] a distinctively separate claim [pending] adjudication of the entire case." Jewel v. Nat'l Sec. Agency, 810 F.3d 622, 628 (9th Cir. 2015) (citation and quotation marks omitted).

Entering final judgment on an individual claim in a multiple-claim suit requires that the Court first determine that it is dealing with a judgment "in the sense that it is a decision upon a cognizable claim for relief" and final in that "it is an 'ultimate disposition of an individual claim.'" Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 7 (1980) (citing Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 436 (1956)). Once the Court determines the judgment is final, the Court will determine whether there is "any just reason for delay." Id. at 8. The court exercises discretion to determine whether an entry of final judgment is in "the interests of sound judicial administration and justice to the litigants." Id. at 5. "[S]ound judicial administration does not require that Rule 54(b) requests be granted routinely." Id. at 10.

#### B. Discussion

Floyd requests entry of final judgment on the Court's denial of leave to amend his complaint to incorporate Floyd's state law claims, arguing there is no just reason to delay final judgment. See Mot. for Entry of Final Judgment at 3. Specifically, Floyd contends that delaying the action would require him to wait to appeal the denial of leave to amend, which would prolong his case further and may have implications if remanded. See id.

---

1983) ("Under the express language of the rule, only pleadings are subject to motions to strike."); Morton v. Twitter, Inc., No. CV 20-10434-GW, 2022 WL 2101912, at *1 (C.D. Cal. Mar. 17, 2022) (holding that "[p]laintiff cannot move to strike a motion under Rule 12(f), only a pleading").

8

Because these "additional claims do not require further discovery nor involve new theories of recovery," Floyd argues the Court should enter final judgment. Id. at 4.

Floyd's contention rests on the faulty assumption that a Court's denial of leave to amend is a final judgment. The Court's Order denying leave to amend is not final. See Strasburg v. M/Y JUST A NOTION, No. 08-CV-21-JLS, 2010 WL 3420794, at *3 (S.D. Cal. Aug. 30, 2010). Thus, "[a]n order denying leave to amend a complaint is not appealable." Hall v. City of Los Angeles, 697 F.3d 1059, 1070 (9th Cir. 2012) (citing Bradshaw v. Zoological Soc'y of San Diego, 662 F.2d 1301, 1304 (9th Cir. 1981)). "Such orders, as a class, contemplate further proceedings in district court, and . . . [thus] review is available after the final judgment, into which [the non-final orders] merge." Bradshaw, 662 F.2d at 1304 (citation omitted). "The opportunity to amend, if erroneously denied, may be effectively protected after final judgment on the merits." Id. Therefore, at this time, the Court cannot enter final judgment on Floyd's state law claims. If he wishes to appeal the Court's denial of leave to amend, he may do so after a final judgment on the merits of his remaining claims.

## IV.    MOTION FOR SANCTIONS

### A.    Legal Standard

Under Federal Rule of Civil Procedure 11, a party may move for sanctions by describing the opposing party's specific conduct that violates Rule 11(b). Rule 11(b) requires that pleadings, motions, or other papers (1) are "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims . . . are warranted by existing law . . . (3) [that] the factual contentions have evidentiary support or . . . will likely have evidentiary support after . . . further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or . . . are reasonably based on belief or a lack of information."

### B.    Discussion

Floyd contends that the County is unduly wasting the Court's and his time by not informing its employees of the lawsuit. See Mot. for Sanctions at 2. Floyd cites to an

9

email conversation with opposing counsel discussing whether the County would ask the individual defendants to waive service and agree to the County accepting service on their behalf once Floyd filed an amended complaint. See dkt. 82 Ex. 1 at 3. When Floyd filed the amended complaint and alerted the County as to its filing, the County stated they would not help effectuate service until the pleadings were settled. See id. at 4.

Floyd cites to two cases to support his request for sanctions: Wiley v. Kern High Sch. Dist., No. 22-CV-0881-AWI, 2022 WL 7105941 (E.D. Cal. Oct. 12, 2022); Birks v. Smith, Strege, Fredericksen, Butts, & Clark, Ltd., No. 19-cv-44-LIB, 2019 WL 5622486 (D. Minn. Feb. 21, 2019). Both are inapposite. The first concerns sanctions for unnecessary pleadings on a motion to remand, while the latter concerns a request for sanctions that was stricken for not complying with the local rules. While the Court recognizes Floyd's frustration with the delay, the County's conduct is not sanctionable.

## V.  CONCLUSION

For the foregoing reasons, the County's motion to dismiss is DENIED, Floyd's motion for sanctions is DENIED, and Floyd's motion for entry of final judgment is DENIED.

**IT IS SO ORDERED.**

Dated: July 21, 2023

CHARLES R. BREYER
United States District Judge

10